```
               IN THE UNITED STATES DISTRICT COURT
             FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BERNHARDT L.L.C.,              )
                               )
          Plaintiff,           )
                               )
     v.                        )   CIVIL NO. 1:01CV00957
                               )
COLLEZIONE EUROPA USA, INC.,   )
                               )
          Defendant.           )
```

MEMORANDUM OPINION

BULLOCK, District Judge

    This case is before the court on remand from the United States Circuit Court for the Federal Circuit, which remanded this matter involving the alleged infringement of six furniture design patents (United States Design Patent Nos. 441,980 ("the '980 patent"); 439,770 ("the '770 patent"); 441,975 ("the '975 patent"); 441,560 ("the '560 patent"); 438,727 ("the '727 patent"); and 439,763 ("the '763 patent") for further consideration by the district court on three issues:

    (1) a determination of whether an invalidating public use within the scope of 35 U.S.C. § 102(b) occurred based on both the appearance to the ordinary observer and the points of novelty test.

    (2) an analysis of how the totality of the circumstances surrounding Bernhardt L.L.C.'s ("Bernhardt") exhibition of the patented designs at Bernhardt's pre-market exhibition "comports

with the policies underlying the on sale and public use bars"
under the totality of the circumstances.

(3) a determination of the points of novelty of Bernhardt's
design patents and whether those points of novelty were
appropriated by Collezione Europa USA, Inc. ("Collezione").

The history of this litigation illustrates the disconnect
between what experienced district judges have come to expect from
litigators generally and what the Federal Circuit and patent bar
believe is required to meet the burden of proof in a patent case
without placing an undue burden on the fact finder or increasing
the potential for disagreement on appeal.  The court will, of
course, seek to address the issues of concern to the Court of
Appeals.

Following remand, the court asked the parties to submit
briefs expressing their views on certain legal issues identified
by the court.  Not surprisingly, the parties' views of the law
are considerably different.  While both parties recognize that
the recent Federal Circuit decision in Lawman Amor Corp. v.
Winner Int'l LLC, 437 F.3d 1383 (Fed. Cir. 2006), is relevant,
they differ in their analysis.  Bernhardt's position appears to
be that Lawman Amor deals only with designs dictated by function,
or that the decision is simply wrong and "cannot be the law."
However, it is an inferior court's duty to apply the law as it is
now on the books, and a district court does not have the luxury
of determining that controlling authority is "wrong" and thus not
following it.

I.

The '980, '770, '975, and '560 Patents -- Public Use[1]

In its initial decision, the district court recognized that it must consider the "totality of the circumstances in conjunction with the policies underlying the public use bar," Baxter Int'l, Inc. v. Cobe Labs., Inc, 88 F.3d 1054, 1058 (Fed. Cir. 1996), including the policies enumerated in Tone Bros. v. Sysco Corp., 28 F.3d 1192, 1198 (Fed. Cir. 1994). In enumerating the policy reasons underlying the public use bar, the district court assumed as a given that a public use bar, which it had already determined to exist, would not discourage the removal from the public domain of inventions that the public reasonably believed were freely available, promoted the prompt and widespread disclosure of inventions, and prohibited the inventor or designer from commercially exploiting the potential economic value of a design for a period greater than the statutorily prescribed time, thus not allowing the inventor an unreasonable amount of time following sales activity to determine the potential economic value of a patent or design. The court believed that a showing open to dozens of potential customers, including media representatives, and the discussion of approximate prices with potential customers to "bait the hook" with the potential customers, along with the absence of a

---

[1] The '560 patent claims an ornamental design for a metal bed. Collezione never sold a bed similar to this design and Bernhardt has offered no points of novelty for the '560 patent.

3

I.

The '980, '770, '975, and '560 Patents -- Public Use[1]

In its initial decision, the district court recognized that it must consider the "totality of the circumstances in conjunction with the policies underlying the public use bar," Baxter Int'l, Inc. v. Cobe Labs., Inc, 88 F.3d 1054, 1058 (Fed. Cir. 1996), including the policies enumerated in Tone Bros. v. Sysco Corp., 28 F.3d 1192, 1198 (Fed. Cir. 1994). In enumerating the policy reasons underlying the public use bar, the district court assumed as a given that a public use bar, which it had already determined to exist, would not discourage the removal from the public domain of inventions that the public reasonably believed were freely available, promoted the prompt and widespread disclosure of inventions, and prohibited the inventor or designer from commercially exploiting the potential economic value of a design for a period greater than the statutorily prescribed time, thus not allowing the inventor an unreasonable amount of time following sales activity to determine the potential economic value of a patent or design. The court believed that a showing open to dozens of potential customers, including media representatives, and the discussion of approximate prices with potential customers to "bait the hook" with the potential customers, along with the absence of a

---

[1] The '560 patent claims an ornamental design for a metal bed. Collezione never sold a bed similar to this design and Bernhardt has offered no points of novelty for the '560 patent.

3

confidentiality agreement, combined to allow Bernhardt to gain a commercial advantage in marketing the displayed designs.

At trial Bernhardt's witnesses testified generally that they were not even sure themselves as to what was exhibited at pre-market, and attempted to discredit Collezione's evidence showing stock keeping units ("SKU") corresponding to four of the contested patents. Bernhardt's witnesses displayed a puzzling lack of knowledge as to the designs shown, but even so reluctantly testified that a design's inclusion on the pre-market list meant that the piece would be shown at pre-market.

In its original decision, the court, after considering the evidence from Bernhardt's own records, including the SKU's corresponding to four of the contested patents, the pre-market list, the pre-market wrap-up, and the evidence that any changes to a design made after pre-market were minor and engineering oriented, found that the designs shown at the 1999 pre-market were "not substantially different" from the designs shown in four of the contested patents. The court, perhaps clumsily, intended to find that, for all intents and purposes, the patented designs were virtually <u>identical</u> to the designs shown at the pre-market. That is, Bernhardt's own records and the admissions by its own witnesses were sufficient to show by clear and convincing evidence that the four patented designs were the same designs exhibited to the public in the pre-market showing. Because none of the limited changes made to any of the designs following pre-market affected any of the design features described in the

4

Markman phase of this case, and because none of the changes related to any of the points of novelty alleged by Bernhardt, the designs shown at pre-market contained the identical ornamental design features Bernhardt alleges as the points of novelty for the corresponding design patents. Therefore, the court found no reason to consider further the points of novelty proposed by Collezione for the four patents because the points of novelty proposed by Bernhardt were found in both the pre-market designs and patented designs. Under both the ordinary observer and points of novelty tests the four pre-market designs were virtually identical and contained the same points of novelty of the patented designs.

The Court of Appeals decision also faulted what it considered the district court's emphasis on the absence of a confidentiality agreement and the court's failure to credit the testimony of Bernhardt's general manager that it was "pretty well understood that confidentiality applies to pre-market." However, the district court's finding intended to recognize that pre-market is not open to the public generally, that picture taking was prohibited, and that the identification of attendees was required. The absence of a confidentiality agreement, along with the relatively large number of invitees, including the news media, the recording of feedback from the potential customers, and the discussion of potential prices is enough, in the court's opinion, to establish clearly a public use for commercial purposes, and is not offset by a restriction on drawings or

5

picture taking, a restricted guest list, and Bernhardt's general manager's testimony as to what others "understood.[2]" A finding of public use under these circumstances prohibits a designer from unilaterally exploiting the design for a period greater than the statutorily prescribed time, favors the prompt and widespread disclosure of inventions, and discourages the attempted removal of designs from the public domain after they have been made publicly available.  Collezione has established by clear and convincing evidence that Bernhardt's designs displayed at the pre-market showing fell within the scope of Bernhardt's patented designs under both the ordinary observer and points of novelty tests, and under the totality of the circumstances Bernhardt's pre-market showing was "public" under 35 U.S.C. § 102(b). Because of the public display of the '980 patent, the '770 patent, the '975 patent, and the '560 patent thirteen months before the filing of the design patent applications, the underlying policies of the public use bar support the invalidation of these patents.

II.

The '727 and '763 Patents

Because four of the six patents at issue are invalid based on the prior public use of those designs at the 1999 pre-market,

---

[2] Crediting the testimony of a witness as to what someone else "understood" presents special difficulties.  Fed. R. Evid. 602; see, e.g., United States v. Mandel, 591 F.2d 1347, 1369 (4th Cir.), aff'd by equally divided court, 602 F.2d 653 (4th Cir. 1979).

6

for the reasons set out above, the court need determine only the points of novelty for the '727 patent and the '763 patent. The court has already determined that Collezione's two designs are substantially the same as Bernhardt's designs and thus satisfied the ordinary observer test. The Court of Appeals concluded that determining what points of novelty distinguished each patent from the prior art and whether the accused items appropriated them was not especially difficult and that the court should examine all of Bernhardt's submissions and make such determinations therefrom. The court has attempted to do this.

The points of novelty for design patents are those features that distinguish the design over the prior art. In determining the points of novelty, a court may consider the prior art before the patent examiner during prosecution as well as prior art that was not before the examiner during the prosecution of the design patent application. Goodyear Tire & Rubber Co. v. Hercules Tire & Rubber Co., 162 F.3d 1113 (Fed. Cir. 1998); Sun Hill Indus. v. Easter Unlimited, Inc., 48 F.3d 1193 (Fed. Cir. 1995). A plaintiff must prove that the accused design appropriated the novelty of the patented design. Litton Sys., Inc. v. Whirlpool Corp., 728 F.2d 1423, 1444 (Fed. Cir. 1984). The purpose of the point of novelty test is to "focus on those specific aspects of a design which render the design different from prior art designs." Sun Hill, 48 F.3d at 1197.

A. The '727 Patent - Buffet

7

The Court of Appeals directed the district court to examine the design patents at issue and their prosecution histories, including cited prior art, and Bernhardt's proposed findings of fact and conclusions of law. The court has done this and finds that Bernhardt proposes the following points of novelty for the '727 patent:

(1) The lattice work on each of the four doors.

(2) The repetition of the lattice work design on the four doors across the front of the cabinet.

(3) The arrangement of doors of equal width across the front of the cabinet such that the two center doors occupy the entire width of the breakfront.

(4) The particular shape of the breakfront.

(5) The use in combination of a decorative frieze between the top and the doors, the breakfront, and the four doors of equal width.

(6) The use in combination of the design elements that give the top of the buffet its characteristic shape and configuration, i.e., an overhanging top having rounded corners on the front facing side and square corners on the rearward facing side, a milled rounded edge that projects out slightly from the flat top surface running along the front and side edges, and having the central half of the outward facing long side thrusting slightly outward by means of concave projections, so as to echo and maintain the degree of overhang over the breakfront of the center of the buffet.

(Pl.'s Proposed Findings of Fact & Conclusions of Law June 10, 2003.)

The furniture art field is crowded with buffets and credenzas, and it does not appear that a number of features, if any, identified by Bernhardt as proposed points of novelty should be points of novelty based on the prior art.

With respect to Bernhardt's proposed points of novelty 1 and 2, the prior art is replete with buffets and credenzas with lattice designs on the doors, some quite similar to Bernhardt's. Such characteristics are found in the prior art including the credenza in the 1973 Cabernet by Drexel catalogue, the Floridita buffet in the Havana collection by Thomasville with a Patent Office date received stamp of 1998, and the U.S. Design Patent Number 231,815 credenza dated May 16, 1974.[3]

With respect to Bernhardt's proposed point of novelty number 3, the arrangement of doors of equal width across the front such that the two center doors occupy the entire width of the breakfront, such features are found in the prior art including the No. 3302 buffet on Page 17 of a Hawthorn II

---

[3] The specific latticework on Bernhardt's doors is not identical to that found in prior art, and Collezione's buffet has similar latticework on its doors, although of different height. Bernhardt did not seek a separate patent on the latticework alone. The impact of Collezione's use of similar latticework would appear to be slight in light of the many buffets and credenzas in the prior art with latticework on the doors and having almost identical appearances as a whole. The court does not believe that appropriation, if it exists, of this allegedly novel feature alone is enough in itself to affect Collezione's design as a whole to the extent that Collezione's buffet appropriates the novelty of the patented design.

catalogue having a handwritten date of August 25, 1975, in the Patent Office. In fact, this buffet appears identical to Bernhardt's buffet except for the lattice on the doors. The prior art also includes several credenzas or buffets with an arrangement of four doors of equal width across the front such that the two center doors occupy the entire width of the breakfront, including U.S. Design Patent No. 231,815, dated June 18, 1974, the credenza in a Montreau by Heritage catalogue with a Patent Office date received stamp of 1979, and the Floridita buffet in the Havana collection by Thomasville with a Patent Office date received stamp from 1998.

With respect to Bernhardt's proposed point of novelty number 4, the particular shape of the breakfront, such shape is found in the prior art in the Hawthorn II No. 3302 buffet on Page 17 of a Hawthorn II catalogue having a handwritten date of August 25, 1975, in the Patent Office, cited above.

With respect to Bernhardt's proposed point of novelty number 5, the use in combination of a decorative frieze between the top of the doors, the breakfront, and the four doors of equal width, the use of similar friezes is common in the prior art, including the Hawthorn II No. 3302 buffet and the credenza in the Montreau by Heritage catalogue with a Patent Office date received stamp of 1979.

Bernhardt's proposed point of novelty number 6, the use in combination of known design elements, may run afoul of the holding of <u>Lawman Amor</u> that a combination of known features

10

cannot constitute a point of novelty. Even so, these design elements are found in the prior art, including the No. 3202 buffet on Page 17 of the Hawthorn II catalogue. This design includes a breakfront which is echoed by a corresponding break in the overhanging top and base molding. Such features are also found in the credenza number 153-154 in a Sketchbook by Heritage catalogue with a Patent Office date received stamp of 1979.

Based on the prior art submitted by Bernhardt and Collezione, the points of novelty of the '727 patent would appear at most to be the specific latticework design on the four doors across the front of the cabinet and the specific decorative frieze between the top of the doors. As noted, the prior art contains numerous buffets and credenzas with latticework on the doors and similar frieze work across the front above the doors. Therefore, even if Bernhardt made slight changes from the prior art sufficient to constitute points of novelty of Bernhardt's design, then similar small changes from Bernhardt's designs by Collezione also constitute a new or novel design. There is as much difference between Bernhardt's and Collezione's decorative friezes as there is between Bernhardt's friezes and the prior art. Furthermore, the latticework on Bernhardt's buffet appears on four doors of the same width and height, while Collezione's buffet includes two pullout drawers and two shorter doors in the center section of the buffet, causing the design on the two center doors to be noticeably shorter than the design on the outer doors.

11

The substantial similarity of Collezione's buffet to Bernhardt's patented design as a whole is not due to Collezione's use of a frieze and latticework. Because Collezione's buffet does not appropriate the points of novelty of Bernhardt's '727 patent, Collezione has not infringed this patent.

B. The '763 Patent - Cabinet

Bernhardt proposes the following points of novelty for the '763 patent:

1. The use in combination of a round arched top that rests, or appears to rest, on crown moulding that begins at the top of each pilaster and continues back horizontally across the sides of the cabinet and a frieze on the front of the cabinet that runs in an arc beneath the entire curve of the arch.

2. The use in combination of decorative scrollwork on the pilasters of a domed cabinet.

3. The use of two mirror image framed transparent doors that open outward, each of which extends to the bottom edge of the domed top and each of which is shaped such that, together, their tops form an arc.

4. Mullion on each door one-third of the way from the bottom running across the transparent portion from one side of the frame to another, shaped so as to appear to form a continuous serpentine shape across the width of the two doors.

12

5.  Decorative filigree (or lattice) work that extends from, and fills the area between, the bottom frame of the door and the mullion.

6.  The use in combination of a stepped base moulding that is wider at the bottom than the top (in pyramid fashion) and forms projections at each of the front facing bottom corners and carved bun feet.

(Pl.'s Proposed Findings of Fact and Conclusions of Law June 10, 2003.)

With respect to Bernhardt's proposed point of novelty number 1, the use in combination of a rounded arched top that rests, or appears to rest, on crown moulding that begins at the top of each pilaster and continues back horizontally across the sides of the cabinet and a frieze on the front of the cabinet that runs in an arc beneath the entire curve of the arch, the prior art, including U.S. Design Patent Number 421,857 and U.S. Design Patent Number 313,707, contains such features with the exception of the specific frieze on the front. Both of these patents are found in the prosecution history of the '763 patent. As noted, frieze work above doors is common in the prior art. Also, the frieze work on the front of Collezione's cabinet that runs in an arc beneath the curve in the arch is different from the frieze work on Bernhardt's cabinet.

With respect to Bernhardt's proposed point of novelty number 2, the use of decorative scrollwork on the pilasters of a domed cabinet, Collezione has not identified and the court has not

13

found anything in the prior art substantially similar to Bernhardt's scrollwork on the pilasters.  This appears to be a novel feature of Bernhardt's design.

Bernhardt's proposed point of novelty number 3, the use of two mirror image framed transparent doors that open outward, each of which extends to the bottom edge of the domed top and each of which is shaped such that, together with their tops, form an arc, has not been identified by Collezione to be found in the prior art, nor has the court found such features in the prior art. While the prior art does include domed cabinets with doors, the court has not seen in the prior art any designs using two mirror image framed transparent doors which together at their tops form an arc.  Therefore, this is a novel aspect of Bernhardt's design.

Bernhardt's proposed point of novelty number 4, mullion on each door one-third of the way from the bottom running across the transparent portion from one side of the frame to another, shaped as to appear to form a continuous serpentine shape across the width of the two doors, does not appear in the prior art. Therefore, it appears that the mullion on each door placed as to form a continuous serpentine shape one-third of the way down is a novel feature of Bernhardt's design.

Bernhardt's proposed point of novelty number 5, decorative filigree (or lattice) work that extends from, and fills the area between, the bottom frame of the door and the mullion is not found in the prior art and appears to be a novel feature of

14

Bernhardt's design.  However, Collezione's cabinet does not contain this particular feature.

Bernhardt's proposed point of novelty number 6, the use in combination of a stepped base moulding that is wider at the bottom than the top (pyramid fashion) and forms projections at each of the front facing bottom corners and carved bun feet, do not appear as such in the prior art.  Collezione cites to U.S. Design Patent number 421,857 but that design does not contain stepped base moulding, nor does U.S. Design Patent number 313,707, also cited by Collezione.  While bun feet are common design elements in furniture design and are found in the prior art, Collezione has not identified and the court has not found the combination of a stepped base moulding resting on carved bun feet.  Therefore, this could also be a point of novelty of Bernhardt's design unless it runs afoul of <u>Lawman Amor</u>.

Of the six points of novelty identified by Bernhardt, it would appear that four of them, and possibly a fifth, are not found in the prior art:  Number 2, the use of decorative scroll work on the pilasters of a domed cabinet; Number 3, the use of two mirror image framed transparent doors that open outward each of which extends to the bottom edge of the domed top and each of which is shaped such that, together, their tops form an arc; Number 4, mullion on each door one-third of the way from the bottom running across the transparent portion from one side of the frame to another, shaped so as to appear to form a continuous serpentine shape across the width of the doors; Number 5,

15

decorative filigree (or lattice) work that extends from, and fills the area between, the bottom frame of the door and the mullion. Bernhardt's proposed point of novelty #6, the use in combination of stepped base moulding that is wider at the bottom than the top (pyramid fashion) and forms projections at each end of the front facing bottom corners and carved bun feet may also constitute a novel aspect of Bernhardt's design.

Of the four specific points of novelty identified by the court, Collezione has not appropriated Bernhardt's point of novelty number 5 because Collezione's design does not include decorative filigree filling the area between the bottom frame of the door and the mullion. Excluding Bernhardt's proposed point of novelty number 6, Collezione's cabinet has appropriated three of the four points of novelty of Bernhardt's design identified by the court.

Bernhardt has designed and patented a cabinet which is significantly different from previous designs in at least three novel instances, as identified above. The variation between Bernhardt's cabinet and the prior art is significant. The cabinets found in the prior art are quite dissimilar to Bernhardt's and to each other, while Collezione's cabinet is substantially similar to Bernhardt's primarily because of Collezione's use of the novel features of Bernhardt's design. Collezione has appropriated in its design three of the four identified points of novelty. The substantial similarity of Collezione's design to Bernhardt's design is due in large part to

16

the appropriation by Collezione of the features of Bernhardt's design that distinguish it from the prior art. The omission of one of the points of novelty does little to affect Collezione's design as a whole. Therefore, Collezione's cabinet appropriates the novelty of Bernhardt's patented design.

III.

Damages

The court has found that Bernhardt's '763 patent, claiming an ornamental design for a cabinet, has been infringed by Collezione. Bernhardt is entitled to damages for this infringement. Bernhardt seeks damages in the form of a reasonable royalty for the use of the design by Collezione, together with interest and costs, under Section 284 of the Patent Act or, alternatively, to recover Collezione's total profit from the sale of the design, as provided by Section 289 of the Patent Act.

Bernhardt suggests a reasonable royalty would be $1,090.00 for each cabinet sold by Collezione. Bernhardt calculates this amount as the difference between the prices of Bernhardt's cabinet and Collezione's cabinet. Bernhardt contends that this amount is necessary to protect Bernhardt from an infringer who "drastically undercuts" Bernhardt's prices.

In recognition of the court's discretion, Bernhardt alternatively seeks as damages the profit realized by Collezione on the sale of each cabinet, which Bernhardt places at $100.00

17

per cabinet. Assuming Bernhardt's figures are generally correct, Bernhardt's proposed royalty would not only absorb all of Collezione's profits but would result in a loss to Collezione of $990.00 on each cabinet sold. Collezione argues that no reasonable royalty could be higher than Collezione's profits.

In addition to the wide disparity between the alternative damage calculations identified by Bernhardt, issues concerning treble damages for willfulness and the availability of attorney's fees will also impact the potential recovery. To avoid piecemeal appellate review, damages for infringement of the '763 patent should be determined before any potential appeal. The court will withhold entering a final judgment for a period of thirty (30) days to allow the parties an opportunity to resolve these issues voluntarily and conclude this lengthy litigation. In the absence of an agreement, the court will enter an appropriate judgment.

An order in accordance with this memorandum opinion shall be entered contemporaneously herewith.

March 27, 2006

/s/ Frank W. Bullock, Jr.
United States District Judge