IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BERNHARDT L.L.C.,            )
                             )
        Plaintiff,           )
                             )
    v.                       )   CIVIL NO. 1:01CV00957
                             )
COLLEZIONE EUROPA USA, INC., )
                             )
        Defendant.           )


MEMORANDUM OPINION

BULLOCK, District Judge

In its March 27, 2006, memorandum opinion the court found that Bernhardt's '763 patent, claiming an ornamental design for a cabinet, had been infringed by Collezione and that Bernhardt is entitled to damages for this infringement. Bernhardt seeks damages in the form of a reasonable royalty for the use of the design by Collezione under Section 284 of the Patent Act or, alternatively, to recover Collezione's total profit from the sale of the design, as provided by Section 289 of the Patent Act.

Bernhardt suggests a reasonable royalty would be $1,090.00 for each cabinet sold by Collezione, which Bernhardt calculates as the difference between the prices of Bernhardt's cabinet ($1,640.00) and Collezione's cabinet ($550.00) shipped to customers from their respective North Carolina warehouses, exclusive of shipping costs. Bernhardt contends that this amount is necessary to protect Bernhardt from an infringer who

"drastically undercuts" Bernhardt's prices.  Alternatively, Bernhardt seeks as damages the profit realized by Collezione on the sale of each cabinet, which Bernhardt places at $100.00 per cabinet, calculated as the price Collezione pays its manufacturer in China and the price a Collezione customer would pay FOB China. On the other hand, Collezione points out that the license agreement between Bernhardt L.L.C. and Bernhardt Furniture Company provides a royalty to Bernhardt L.L.C. of four per cent (4%) of its licensee's gross sales, and that this 4% royalty includes other intellectual property unrelated to the patents in suit.  Presumably Collezione would have the court conclude that anything over four per cent (4%) would be unreasonable.

Using Bernhardt's figures for the price Collezione charged its customers for the cabinet "FOB China" and multiplying this amount by the number of cabinets sold by Collezione after the date of service of the complaint, minus returns, Collezione's sales of the cabinet total approximately $81,000.00 FOB China and $127,000.00 FOB North Carolina (260 sold minus 28 returns equals 232 times $350 FOB China or times $550 FOB NC).  Using Bernhardt's suggested royalty of $1,090.00 per item (Bernhardt's $1,640.00 price FOB NC minus Collezione's $550.00 price FOB NC) results in a royalty of approximately $253,000.00, twice Collezione's gross sales FOB NC.  Using Collezione's four per cent (4%) of gross sales as a royalty yields $3,240.00 FOB China or $5,080.00 FOB NC.

2

None of these proposed royalties are reasonable, giving full recognition to the fifteen so-called Georgia-Pacific factors the Federal Circuit has recognized as proper considerations in determining a reasonable royalty.[1] However, the court is not bound to the figures suggested by the parties and may, in the exercise of its reasonable discretion, fix a different royalty rate and amount. SmithKline Diagnostics v. Helena Labs., Inc., 926 F.2d 1161, 1168 (Fed. Cir. 1991). The court may also consider other measures of a patentee's damages, such as a Bernhardt's alternative proposal of damages in the full amount of Collezione's profits on the infringed item.[2]

Bernhardt and Collezione target customers in different segments of the market. Bernhardt's niche is the high-end of the market and it sells furniture to people who are willing to pay premium prices. On the other hand, Collezione makes no attempt to sell to high-end or status retailers, but sells to popular-price retailers at prices significantly below Bernhardt's prices. In fact, Collezione's price for its cabinet is only one-third (1/3) that of Bernhardt's cabinet, according to Bernhardt's figures. Furthermore, many others manufacture curio cabinets for sale at various price points.

---

[1] See, e.g., Dow Chem. Co. v. Mee Indus., Inc, 341 F.3d 1370, 1382 (Fed. Cir. 2003).

[2] Contrary to Collezione's position in its brief, there is no rule that a royalty be no higher than an infringer's profits. See State Indus., Inc. v. Mor-Flo Indus., Inc, 883 F.2d 1573, 1580 (Fed. Cir. 1989).

3

Bernhardt has not attempted to show that it lost sales of its cabinet because its potential customers bought Collezione's lower-price cabinet instead. Therefore, Bernhardt does not seek its lost profits. Bernhardt has presented evidence as to Collezione's profits, however, and seeks to recover Collezione's total profit from the sale of Collezione's cabinet as an alternative remedy for Collezione's infringement of Bernhardt's design patent, as provided by 35 U.S.C. § 289. Under the facts of this case the court believes that the alternate remedy sought by Bernhardt under Section 289 of the Patent Act is the most reasonable measure of damages, especially given the inherent difficulties in measuring damages based in part upon a hypothetical negotiation between the two parties, given their respective positions in the market place, the animosity between them, and the limited applicability of many of the Georgia-Pacific factors in determining a reasonable royalty.[3]

Using Bernhardt's figures, which appear to be reasonable[4], Collezione realized a profit of $100.00 per unit on each cabinet sold following the date of the service of the complaint. Subtracting the twenty-eight (28) cabinets returned from the

---

[3] The most relevant Georgia-Pacific factors are of little help: any established royalty (factor one) would not be a reasonable measurement; Bernhardt would not license Collezione anyway (factor four); the parties would never have a commercial relationship (factor five); Collezione's use of the design has been in a different market niche (factor eleven); the parties would never have agreed on any royalty (factor fifteen).

[4] Although Collezione has quibbled with some of Bernhardt's figures, the court finds Bernhardt's use of the sales, costs, and shipping information to be reliable.

total of 260 sold, Collezione's total profit, according to Bernhardt, on the 232 cabinets sold was $23,200.00. The court believes that this amount is adequate to compensate Bernhardt for the infringement of its design patent under the circumstances.[5]

35 U.S.C. § 289 has no provision for enhanced damages, see Catalina Lighting, Inc. v. Lamps Plus, Inc., 295 F.3d 1277, 1291 (Fed. Cir. 2002), so Bernhardt is entitled only to Collezione's profits from each sale. Even so, the court does not find Collezione's actions to be willful in the sense that Bernhardt would be entitled to increased damages under 35 U.S.C. § 284. Collezione makes no pretense of being anything other than a company involved in the business of "knocking off" or producing designs substantially similar to an existing item and selling them at significantly lower prices. In this case, Collezione admits that it had a copy of Bernhardt's catalogue for its Coronado collection and made, or had its designer or the Chinese manufacturer make, slight changes to the items. Collezione's president, Leonard Frankel, testified that he had been in the furniture business for a long time, that he often made some changes in another's items or "designed around" the patented items, that his company had been involved in patent litigation before, that he had "seen a million arched curio cabinets" and

---

[5] Damages of $23,200.00 would be the equivalent of a royalty rate of approximately twenty-eight per cent (28%) of the gross amount Collezione realized from the sale of its cabinets FOB China, and eighteen per cent (18%) of the gross amount realized FOB NC. Either of these figures would be more reasonable than the amounts suggested by the parties.

5

that there was nothing "dramatically unusual" about the Bernhardt design. He also agreed that similarities between Collezione's cabinet and Bernhardt's cabinet were not coincidental. In sum, Frankel testified that he felt free to manufacture a cabinet substantially similar to Bernhardt's because there were very few furniture designs truly original, and that Bernhardt's designs were all versions of something someone else had done and were not deserving of patent protection. Frankel testified that on many occasions, based on his experience, he "can look at the piece and say this piece is just the same as a million other things." Even so, following Bernhardt's service of its complaint, Frankel did contact a patent attorney and obtain an opinion as to the validity of Bernhardt's patents.

The United States Supreme Court has recognized that the life blood of our economy is free economic competition, including the free copying of things that are in the public domain. "[T]he federal patent laws have embodied a careful balance between the need to promote innovation and the recognition that imitation and refinement through imitation are both necessary to invention itself and the very lifeblood of a competitive economy." <u>Bonito Boats, Inc. v. Thunder Craft Boats, Inc</u>, 489 U.S. 141, 146 (1989). Legitimate copying is part of a free-market economy and serves a legitimate public interest by offering an identical or equivalent product at a lower price or in greater quantity. Therefore, producers such as Collezione are encouraged, provided

6

they do not infringe upon the limited rights provided under the law.

Willfull copying and willful infringement are two different concepts. Frankel testified, based primarily on his experience in the furniture industry, that he did not believe that Bernhardt's Coronado collection was deserving of patent protection because it was similar to "a million other" items on the market. Review of the prior art submitted in connection with this case does not lead the court to find Frankel's testimony entirely unreasonable. Lacking humility is not the same as admitting patent infringement. Indeed, as the court found in this case, Frankel was correct in his belief that another piece of Bernhardt's Coronado collection did not deserve patent protection. Therefore, even if the court was proceeding on the basis of establishing a reasonable royalty, the court would not award enhanced damages as might be justified in a case in which the infringer acted in wanton disregard of the patentee's patent rights or did not have sound reason to believe he could act as he did. Collezione conducted a patent search in July or August 2000, and after being served with the complaint and copies of the issued patents in October 2001 contacted a patent attorney and obtained an opinion on validity.[6] The totality of the

---

[6]Although Bernhardt criticizes the opinion, arguing, apparently incorrectly, that the attorney did not have a picture of the production version of Bernhardt's cabinet and that he failed to recognize that combinations of known elements could themselves be points of novelty, the court does not find the opinion or reliance upon it unreasonable.

7

circumstances here also includes the closeness of the matter presented. See SRI Int'l, Inc. v. Advanced Tech. Labs, 127 F.3d 1462, 1465 (Fed. Cir. 1997).

An award of attorney's fees under 35 U.S.C. § 285 is not appropriate for the same reasons that Bernhardt is not entitled to enhanced damages. Furthermore, the court is not aware of any litigation misconduct in this case, which may under some circumstances make a case "exceptional." See, e.g., Read Corp. v. Portec, Inc., 970 F.2d 816, 831 (Fed. Cir. 1992), abrogated in part on other grounds by Markman v. Westview Instruments, Inc, 52 F.3d 967 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996); Pacific Furniture Mfg. Co. v. Preview Furniture Corp,. 626 F. Supp. 667 (M.D.N.C. 1985), aff'd, 800 F.2d 1111 (Fed. Cir. 1986) (bad faith exhibited by defendants during the course of litigation can provide distinct basis for attorney's fees under 35 U.S.C. § 285).

For the reasons stated above, the court will award Bernhardt damages adequate to compensate Bernhardt for Collezione's infringement of Bernhardt's '763 patent in the amount of $23,200.00, together with pre-judgment interest and costs. Because Collezione discontinued its importation and sale of the infringing item at least three years ago and there is no evidence that such activity is likely to be resumed, an injunction is not warranted.

An order and judgment in accordance with this memorandum opinion shall be entered contemporaneously herewith.

_____
United States District Judge

June 15, 2006